## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**NICHOLAS NORRIS KERR,**

   **Petitioner,**

**v.**                                          **Case No.  5:15cv6-WS/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,**

   **Respondent.**
_____/

### REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On January 12, 2015, Petitioner Nicholas Norris Kerr, a prisoner in the custody of the Florida Department of Corrections, proceeding with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C § 2254 and a memorandum of law in support of the petition.  ECF Nos. 1, 3.  On July 15, 2015, Respondent filed an answer, with exhibits.  ECF No. 10.  Petitioner filed a reply on September 28, 2015.  ECF No. 13.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the
pleadings and attachments before the Court show that Petitioner is not
entitled to federal habeas relief and this amended § 2254 petition should be
denied.

## Background and Procedural History

Petitioner was charged by information filed in the circuit court of the
Fourteenth Judicial Circuit, Calhoun County, Florida, in November 2010
with Count I, possession of a firearm by a convicted felon; Count II (no
information filed on duplicate count); Count III, discharging a firearm in
public; and Count IV, possession of marijuana.  Ex. A at 9-10.[1]  Jury trial
was held June 13, 2011.  Ex. E.  The jury found Petitioner guilty as charged
of Count I, with a specific finding of actual possession.  Ex. A at 64.  On
Count III, discharging a firearm in public, Petitioner was found not guilty,
and he was convicted as charged in Count IV of possession of less than 20
grams of marijuana.  Ex. A at 64.

Judgment and sentence were entered on July 6, 2011, and Petitioner
was sentenced to 15 years on Count I and time served on Count IV.  Ex. A
at 140-44.  He was given credit for 207 for time served.  Ex. A at 143.

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through V
filed by Respondent with the answer, ECF No. 10, unless otherwise indicated.

Petitioner appealed to the state First District Court of Appeal.  Ex. A at 145;

Ex. G.[2]  The appellate court affirmed per curiam without opinion on July 23,

2012, Ex. J, and the mandate was issued on September 6, 2012.  Ex. L.

See Kerr v. State, 95 So. 3d 218 (Fla. 1st DCA 2012) (table).

Petitioner, proceeding with counsel, filed his initial motion for post-

conviction relief under Florida Rule of Criminal Procedure 3.850 on August

16, 2013, and an amended motion on October 24, 2013.[3]  Ex. M at 1-25.

The State filed a response pursuant to order, Ex. 28, and on June 9, 2015,

the motion was summarily denied as facially invalid and refuted by the

record.  Ex. N at 222-28.  Petitioner appealed, Ex. Q, and the state First

District Court of Appeal affirmed per curiam without opinion.  Ex. S.

Petitioner's motion for rehearing was denied, Ex. U, and the mandate was

issued January 5, 2015.[4]  Ex. V.  See Kerr v. State, 152 So. 3d 569 (Fla.

1st DCA 2014) (table).

---

[2] The claims of error raised on direct appeal were: (1) the trial court erred in denying defendant's motions to suppress the evidence taken from his vehicle under the automobile exception; and (2) the State failed to prove defendant was the person who was in actual possession of the firearm, thus violating the federal constitutional right to due process.  Ex. G.

[3] The claims raised in Petitioners amended initial Rule 3.850 motion were: (1) Ineffective assistance of counsel (IAC) in failing to object to introduction into evidence of the assault rifle, Ex. M at 11; (2) IAC in failing to challenge warrantless arrest, Ex. M at 17; and (3) IAC in failing to challenge warrantless seizure of vehicle from private driveway, Ex. M at 20.

[4] The claims of error raised on appeal from denial of post-conviction relief were:  (1) Ineffective assistance of counsel (IAC) for failing to challenge the warrantless seizure

Petitioner filed his petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 in this Court raising the following grounds for relief:

> (1) Trial counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to argue that law enforcement's search and seizure of Petitioner's vehicle did not fall within the automobile exception set forth in Carroll v. United States, 267 U.S. 132 (1925), because it was on private residential property at the time.  ECF No. 1 at 5.

> (2) Petitioner's conviction of actual possession of a firearm by a convicted felon was based on insufficient evidence to prove guilt beyond a reasonable doubt and violates federal Due Process.  ECF No. 1 at 6.

> (3) Trial counsel rendered ineffective assistance by failing to challenge Petitioner's warrantless arrest.  ECF No. 1 at 8.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

and subsequent search of the vehicle; (2) IAC in failing to challenge the warrantless arrest; and (3) IAC in failing to challenge the admission of a semi-automatic rifle at trial. Ex. Q at 1-39.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . .  It preserves authority to issue the writ in cases where there is no possibility fairminded

jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Secretary, Florida Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v.

Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971).

In order to obtain review where a claim is unexhausted and thus procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497 (1991) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice.  Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Carrier, 477 U.S. at 496).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).

 For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*

### Ground 1:  Search and Seizure of the Vehicle

Petitioner contends in Ground 1 that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to

argue in his amended motion to suppress that law enforcement's seizure and subsequent search of Petitioner's vehicle did not fall within the automobile exception set forth in <u>Carroll v. United States</u>, 267 U.S. 132 (1925).  He contends that because the vehicle was in the driveway of private residential property at the time, the seizure and subsequent search was invalid, and that if that specific ground had been argued, the evidence would have been suppressed.  ECF No. 1 at 5.  The search, which occurred after Petitioner was arrested and taken into custody at the same time as the vehicle was seized, resulted in the discovery of two firearms in the trunk and some marijuana in the console.

This claim was raised in Petitioner's Rule 3.850 motion but was denied.  The post-conviction court stated in pertinent part:

> The Defendant claims that counsel argued at the amended motion to suppress hearing that law enforcement did not have probable cause to search the vehicle.  However, he alleges that counsel should have argued that the automobile exception in <u>Carroll</u> does not apply when a vehicle is parked in a private driveway, citing [<u>Florida v. White</u>, 526 U.S. 559 (1999)], and <u>Coolidge v. New Hampshire</u>, 403 U.S. 443 (1971).  He claims that, had counsel made this argument, the firearms found in the rear of the vehicle and the marijuana found in the console would have been suppressed, and the State would not have been able to prove its case.
>
> This issue was clearly raised in the Defendant's direct appeal.  In Issue I of his Initial Brief, the Defendant argued: "The trial court erred in denying Mr. Kerr's motion to suppress evidence taken from his vehicle when it applied the 'automobile

exception' to a vehicle seized from private residential property."
(*See* attached Initial Brief at p. i, 13-18; Reply Brief at p. 1-8).
The Defendant asserted that he had preserved this issue for
appellate review.  (Initial Brief at p. 13).  The Defendant cited all
of the cases that he relies upon in the instant motion,
specifically arguing that <u>Coolidge</u> controlled and that the
evidence should have been suppressed because the vehicle
was parked on private property.  (*Id.* at p. 13-18).  Importantly,
the State did not argue that the issue had not been preserved
for appellate review, but argued the issue on the merits.  (*See*
attached Answer Brief at p. 7-12).

The merits of this issue were litigated and decided against
the Defendant in the direct appeal.  The Defendant cannot re-
litigate this issue under the guise of ineffective assistance of
counsel.  *See* <u>Booska v. State</u>, 935 So. 2d 1238 (Fla. 5th DCA
2006) (defendant's direct appeal was per curiam affirmed
without opinion; in his rule 3.850 motion, several of the claims
consisted of a "rehash" of points raised and rejected in the
direct appeal; the DCA noted that, because it found no error in
the underlying claims, trial counsel could not be deemed
ineffective for not more vigorously objecting to or raising the
issues; the DCA stated: "rule 3.850 does not provide a second
avenue for raising purportedly reversible errors that were
argued in the plenary appeal by re-raising them in the guise of
ineffective assistance claims"); <u>Smith v. State</u>, 126 So. 3d 397,
399 (Fla. 4th DCA 2013) (defendant's first two claims were
raised on direct appeal and affirmed and were procedurally
barred in the postconviction proceeding; defendant's third
claim, which raised a claim of ineffective assistance of counsel,
was also barred; the DCA stated: "The defendant cannot
circumvent the procedural bar to relitigating his first two claims
under the guise of an ineffective assistance of counsel claim");
<u>Freeman v. State</u>, 761 So. 2d 1055, 1067 (Fla. 2000) (issue
raised on direct appeal could not be relitigated under the guise
of ineffective assistance of counsel).  This ground is due to be
denied.

Based upon the foregoing, the Court adopts and
incorporates the arguments of the Assistant Attorney General
made in the State's Answer Brief in the appeal as to the merits

of the underlying issue, and asserts that, based upon these arguments, counsel cannot be deemed ineffective for failing to make a meritless motion.  <u>Owen [v. State</u>, 986 So. 2d 534 (Fla. 2008)], *supra*.  Accordingly, Defendant's ground is denied*.*

Ex. N at 226-227.

The amended motion to suppress filed in the trial court by Petitioner alleged that the firearms and marijuana found in the vehicle should be suppressed because the items "were seized in violation of the Federal and State Constitutional guarantees to be free from illegal search and seizure." Ex. A at 55.  He also alleged that "the vehicle and its contents were seized without any showing of probable cause, prior to any consent being obtained from the defendant to search his vehicle."  Ex. A at 56.  His motion further alleged that the search was not valid based on an inventory search and that "an illegal seizure of the vehicle preceded the giving of consent."  Ex. A at 56.

The facts concerning the location and seizure of the vehicle were set forth at the June 3, 2011, hearing on the amended motion to suppress. The State's first law enforcement witness testified that the vehicle was seized because it was involved in a crime.  Shortly before the vehicle was seized the police received a report of a shooting from the vehicle.  Ex. C at 11.  A witness had reported Petitioner was the individual shooting a firearm from the car.  Ex. C at 30.  The law enforcement witness also testified that

the State sought forfeiture of the vehicle and, for that reason, an inventory search would have been conducted in any event.  Ex. C at 11.  At the time the car was seized, it was parked at his mother's residence and Petitioner was inside the residence.  Ex. C at 20; Ex. E at 100.

At the conclusion of the hearing, the trial court ruled that the police had probable cause to seize the vehicle based on the totality of the circumstances, including that it had been involved in a crime, the short period of time between the report of the crime, and the location of the vehicle.  Ex. C at 35-37.  Although Petitioner's motion to suppress did not discuss the Carroll decision or the specific ground that the search and seizure of the vehicle was invalid because it was taken from a driveway on private property, the trial court stated on the record that "[u]nder the Carroll doctrine, they would have had authority to search that automobile even without a search warrant."  Ex. C at 36.

After the hearing, the trial court entered a written order denying the amended motion to suppress, stating that "law enforcement had probable cause to believe the defendant had committed a felony involving a firearm while in his green Honda Accord."  Ex. M at 45.  The order also stated that the "criminal activity occurred a short time before law enforcement seized said green Honda"; "there was probable cause to believe that the

defendant's green Honda was used in the commission of that criminal activity"; and "the defendant's consent to search said vehicle was given voluntarily."[5]  Ex. M at 45.

On direct appeal from the conviction and sentence, Petitioner raised the issue of the validity of seizing the vehicle from a private driveway, discussing the <u>Carroll</u> decision and others.  Ex. G at 14-16.  The State, in its answer brief, did not allege failure to preserve the argument and responded on the merits.  Ex. H at 6-12.  The state First District Court of Appeal affirmed per curiam without opinion, which is a determination on the merits.  *See* <u>Richter</u>, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *see also* <u>Wright v. Sec'y for the Dep't of Corrections</u>, 278 F.3d 1245, 1254 (11th Cir. 2002).  The fact that the appellate court did not write an opinion explaining its rationale does not detract from the deference owed that decision.  *Id.* at 1255.

---

[5] The voluntariness of the consent to search was decided in an earlier hearing on Petitioner's first motion to suppress.  *See* Ex. A at 40 (motion); Ex. B (May 6, 2011, hearing); and Ex. A at 53 (order denying first motion to suppress).  That issue was not disputed on direct appeal and is not an issue in this § 2254 proceeding.

To foreclose federal review, a state bar must be firmly established and regularly followed.  Ford v. Georgia, 498 U.S. 411, 423-24 (1991). That portion of the post-conviction court's order concluding that this claim was procedurally barred in collateral review by having been raised and decided on direct appeal was supported by the facts and by Florida law.  The Florida Supreme Court has held that an issue raised on direct appeal cannot be relitigated "under the guise of ineffective assistance of counsel." Freeman v. State, 761 So. 2d 1055, 1067 (Fla. 2000) (citing Hardwick v. Dugger, 648 So. 2d 100, 106 (Fla. 1994)).  "An allegation of ineffective assistance of counsel will not be permitted to serve as a means of circumventing the rule that habeas proceedings do not provide a second or substitute appeal."  Blanco v. Wainwright, 507 So. 2d 1377, 1384 (Fla. 1987); see also Bryan v. Dugger, 641 So. 2d 61, 65 (Fla. 1994) (holding that issue argued on direct appeal cannot be reargued in post-conviction proceeding on different grounds).  These state law precedents barring relitigation of claims that were heard on direct appeal under the guise of ineffective assistance of counsel in post-conviction proceedings are firmly established and regularly followed.  Because the post-conviction court found this claim of ineffective assistance of counsel was barred, it is procedurally defaulted in this Court.

The United States Supreme Court has held that presenting a claim to the state court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation.  *See* Castille v. Peoples, 489 U.S. 346, 351 (1989); *see also* Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) (observing that a state habeas petitioner who fails to raise a federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default). "[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim."  Alderman, 22 F.3d at 1550 n.10.

The post-conviction court addressed both the state procedural bar and the merits of the claim of ineffective assistance of counsel, concluding that the claim should be denied on the merits.  Regardless of any procedural bar, however, the claim lacks merit.  Under Strickland, Petitioner must show both deficiency and prejudice.  Petitioner argued on direct appeal that the seizure of the vehicle was invalid under Carroll and other cases discussing warrantless seizure of vehicles.  The argument in the

State's answer brief fully addressed the merits of the claim.  That argument was incorporated by reference in the order of the post-conviction court in denying this claim.  Ex. N at 227; Ex H (direct appeal answer brief).

Under that rationale, the post-conviction court agreed with Respondent that within ten minutes of the reports that Petitioner had discharged a firearm from a vehicle, a matching car was found at Petitioner's mother's residence, thus giving probable cause that the vehicle contained evidence of the offense.  The post-conviction court adopted the State's argument that the police could seize and search the vehicle because it was a mobile repository of evidence and Kerr's brother, also implicated in the incident, could have taken the car from the scene.[6]  *See* Ex. N at 227; Ex. H at 8.  The State made the further argument on direct appeal, and the post-conviction court adopted the argument, that the car was an instrument of a felony, and that exigent circumstances allowed the warrantless seizure and subsequent search of the car.  *See id.*  The post-conviction court also adopted the State's appellate argument that Coolidge v. New Hampshire, 403 U.S. 443 (1971), was not dispositive of whether police could seize and search the vehicle found on private property without

---

[6] At trial, Petitioner testified that friends and family normally drove the green Honda. *See* Ex. E at 98.

a warrant because that case did not involve exigent circumstances.  *See* Ex. H at 9.

In his claim in this Court, Petitioner cites as ineffective assistance his trial counsel's failure to argue that the warrant exception established in Carroll v. United States, 267 U.S. 132 (1925), was not applicable when the vehicle in question is on private property.  ECF No. 3 at 9.  The Supreme Court in Carroll provided a limited exception to the prohibition of warrantless searches where officers have probable cause to believe that a readily mobile vehicle contains contraband or evidence of a crime.  The Supreme Court later described Carroll as holding that "a valid search of a vehicle moving on a public highway may be had without a warrant, but only if probable cause for the search exists."  Brinegar v. United States, 338 U.S. 160, 164 (1949).  In 1999, the Supreme Court had occasion to apply Carroll, and described it as holding that when officers have probable cause to believe that an automobile contains contraband, the Fourth Amendment does not require them to obtain a warrant before searching the car for and seizing contraband.  Florida v. White, 526 U.S. 559, 562-64 (1999).  In that case, the vehicle was parked at the defendant's place of business and the search was upheld.

In <u>California v. Carney</u>, 471 U.S. 386 (1985), a case cited by Petitioner, the Supreme Court approved a warrantless search of a motor home parked in a downtown lot not only because it was "readily mobile" and "capable of traveling on the public highway," but because automobiles are entitled to a lesser expectation of privacy.  *Id.* at 391-92.  The Court in <u>Carney</u> also stated: "When a vehicle is being used on the highway, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes . . . the two justifications for the vehicle exception come into play."  *Id.* at 392-92.  This appears to suggest the converse, that if the vehicle is stationary at a place that <u>is</u> regularly used for residential purposes the exception might not apply.  It is not so clear, however, that the statement was intended to be a bright line rule for all vehicles or whether it was specific to vehicles capable of being used as a residence such as was the motor home in <u>Carney</u>.  The Court found the search in <u>Carney</u> proper because the police had probable cause, the vehicle was readily mobile, and "was so situated that an objective observer would conclude that it was being used not as a residence, but as a vehicle." *Id.* at 393.  The Supreme Court went on to explain that the exception to the warrant requirement as it pertains to vehicles "has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting

that objectively indicates that the vehicle is being used for transportation."
*Id.* at 394.

The court in Harris v. Giles, No. 1:08cv814, 2011 WL 904456, at *9
(M.D. Ala. Feb. 17, 2011), adopted, Harris v. Giles, 2011 WL 900144 (M.D.
Ala. Mar. 15, 2011) (not published), distinguished Carney on the basis that
it dealt with a motor home.  The court in Harris stated, "[T]he Court's
statement in Carney that the automobile exception applies when a vehicle
is found 'in a place not regularly used for residential purposes,' was a
reference to the limitation of the automobile exception to motor homes (or
other objects that are equally capable of use as either a home or a vehicle)
that are situated in such a place and in such a manner as to indicate their
use as vehicles rather than homes."  Harris, 2011 WL 904456, at *9
(citation omitted).  *But see* United States v. Fields, 456 F.3d 519, 524-25
(5th Cir. 2006) (there is some authority to find that the automobile
exception may not apply when the vehicle is parked at a place where the
defendant resides).

In Pennsylvania v. Labron, 518 U.S. 938 (1996), decided a decade
after Carney, the Supreme Court reversed a state court ruling that the
search of a truck parked in the driveway of a farmhouse was
unconstitutional.  The Court found that the search was proper based on the

ready mobility of the vehicle and the reduced expectation of privacy in automobiles, and the fact that probable cause existed to believe the truck contained contraband.  *Id.* at 940.  Citing Carney, the Court in Labron stated: "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."  *Id.* (citing Carney, 471 U.S. at 393).  The fact that the searched vehicle was parked at a residential property instead of on public or business property was not an impediment in Lebron to the validity of the search based on probable cause and the ready mobility of the vehicle.

"The requirement of ready mobility is satisfied merely if 'the automobile is operational."  U.S. v. Lindsay, 482 F.3d 1285, 1293 (11th Cir. 2007).  Petitioner's vehicle was readily mobile as was demonstrated by witnesses having seen it operational only ten minutes earlier when the shots were fired and reported.  *See also* United States v. Markham, 844 F.2d 366, 369 (6th Cir. 1988) (finding search of motor home parked in private residential driveway entitled to warrant exception where probable cause existed and motor home was not connected to utilities); Herring v. Singer, No. 4:08cv111, 2010 WL 5564449, at *26 (N.D. Fla. Oct. 6, 2010) (regarding search of vehicle parked at residence, "Petitioner has failed to

show that the state court's adjudication of the claim was unreasonable.  If a

vehicle is readily mobile and probable cause exists to believe that the

vehicle contains evidence or contraband or that the vehicle was involved in

the commission of a crime, the Fourth Amendment permits police to search

and seize the vehicle without more.") (citing <u>Labron</u>, 518 U.S. at 940),

<u>adopted</u>, <u>Herring v. Singer</u>, 2011 WL 91967 (N.D. Jan. 11, 2011)

(unpublished).

In Petitioner's case, the vehicle parked at this mother's residence was

readily mobile and, based on reports that a firearm was discharged from

the vehicle just minutes earlier, the police had probable cause to believe

the vehicle was involved in the commission of a crime and that it contained

contraband.  Thus, Petitioner has not demonstrated that trial counsel was

deficient in failing to argue that the search and seizure is invalid because

the vehicle was in a private driveway.  He has further failed to establish a

reasonable probability that, but for counsel's alleged error, the evidence

seized from the vehicle would have been suppressed.  Based on the

Supreme Court's ruling in <u>Labron</u>, it cannot be said that the Supreme Court

has determined that a vehicle parked on residential property is never

subject to the automobile warrant exception.  "[E]ven a good Fourth

Amendment claim alone will not earn a prisoner federal habeas relief.  Only

those habeas petitioners who can prove under <u>Strickland</u> that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1289-90 (11th Cir. 2016) (quoting <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382 (1986)).  Petitioner has not made such a showing, nor has he demonstrated that the trial court's adjudication of this claim was unreasonable.  *See* <u>Richter</u>, 562 U.S. at 102 ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

Moreover, the state court also determined that Petitioner provided consent to search the vehicle, *see* n.5 <u>supra</u>, and the evidence established that a forfeiture of the vehicle was sought and an inventory search would have been done in any event.  *See* Ex. C at 11.  Accordingly, for all the foregoing reasons, Petitioner has not met his burden of establishing, pursuant to 28 U.S.C. § 2254, that the state courts' adjudication of the claim is contrary to, or involving an unreasonable application of, clearly established federal law, as determined by the Supreme Court, nor has he demonstrated that it was an unreasonable determination of the facts in light of the state court record.  Ground 1 should be denied.

Case 5:15-cv-00006-WS-CAS   Document 14   Filed 02/28/17   Page 24 of 49

Page **24** of 49

## <u>Ground 2: Insufficient Evidence of Possession of Firearm</u>

Petitioner next contends that his conviction of actual possession of a firearm by a convicted felon was based on insufficient evidence to prove guilt beyond a reasonable doubt and thus violates the Due Process Clause of the federal Constitution.  ECF No. 1 at 6.  He contends that the evidence failed to establish he was driving the green Honda and that no fingerprints were found on the firearms taken from the vehicle.  He further argues that a gunshot residue examination was not done on him.  ECF No. 3 at 15. Petitioner contends that the issue of sufficiency of the evidence was raised both at trial and on direct appeal, and that the state courts' determination that the evidence was sufficient to prove actual possession of a firearm by a convicted felon is an unreasonable application of clearly established federal law as determined by the Supreme Court.  ECF No. 1 at 7.

At trial, the State presented the testimony of Myra Jackson that on November 12, 2010, she witnessed an argument between her sister, Greta, and Petitioner, Greta's boyfriend.  Ex. E at 25.  She said Petitioner made a vague threat that he would see them "in the streets" when Myra's father asked him to leave the property.  Ex. E at 26.  Petitioner and another male, Petitioner's brother, left—Petitioner driving a pink Lincoln and his brother driving the green Honda.  Ex. E at 27.  The green car came back by the

property several times and on the third time, Myra saw a black gun point

out the driver's side of the car and heard four or five shots fired.  She did

not see who was driving at that time.  Ex. E at 29.  Myra agreed she first

told police that Petitioner's brother was driving the green Honda.  She

explained she made that assumption because he left driving it earlier.  Ex.

E at 30.

Christell Jackson, Myra's mother, testified that on that date she was

heading to the house where Petitioner and Greta had been arguing.  Ex. E

at 35.  As she approached the house, she saw the green car parked on the

side of the road and the pink car coming down the road.  When the pink car

stopped, the driver of the pink car, Petitioner, jumped out and ran toward

the green car as the driver of the green car ran the opposite way toward the

pink car.  The driver's side doors of both cars were open.  Ex. E at 36.  She

proceeded to the house and, once there, saw the green car come back by

the house with shots being fired.  Ex. E at 37-38.  She did not see who was

driving and could not tell if anyone else was in the car.  Her daughter, Myra,

then called the police.  Ex. E at 39.

Darryl Duane Temple, police officer with the City of Blountstown,

Florida, was called to investigate the November 12, 2010, incident involving

shots fired from the green Honda.  Ex. E at 69.  Temple took statements

from Myra Jackson and Christell Jackson.  Ex. E. at 71.  He agreed that Petitioner was not behind the wheel of the green Honda when he was arrested.  Ex. E at 70.

Police Chief Rodney Smith testified that Petitioner, while at the police department and after being read his Miranda rights, told police that there was a gun in the green Honda.  A search was made and a Colt revolver loaded with one live round, along with five spent rounds, and a loaded .308-caliber assault rifle, were found in the vehicle.  Ex. E at 41-42.  No fingerprints were found on the guns, and no gunshot residue test was performed on Petitioner.  Ex. E at 46-47.  A digital scale and some marijuana were also found in the car.

Timothy Partridge, Lieutenant with the Blountstown police department, testified that the green Honda was searched after Petitioner signed a consent to search form after being advised of his rights.  Ex. E at 53.  The search revealed the loaded firearms and spent shell casings, which were admitted into evidence.  Ex. E at 54-55, 68.  Petitioner told the officer that the marijuana was his, but he did not claim ownership of the firearms.  Ex. E at 57.  The firearms were found in the trunk, and the vehicle had a hatch that opened from inside the passenger compartment, giving access to the trunk.  Ex. E at 55, 60.

The parties' stipulation that Petitioner was a convicted felon was read to the jury.  Ex. E at 23.  After the State rested, Petitioner presented the testimony of Petitioner's girlfriend Greta Jackson, who testified that it was her father and Petitioner who had a disagreement over car repairs her father performed on Petitioner's car.  Ex. E at 92-93.  As soon as Petitioner got into the pink car and left, she got in her car as well.  She did not hear any shots or see the green car come back.  Ex. E. at 93-94.

Petitioner testified that on the day of the incident, his brother took him in the green Honda to pick up the pink Lincoln.  Ex. E at 98.  He said that after he left in the Lincoln, he did not drive back by in the green Honda, did not fire a gun, and did not own any firearms.  Petitioner testified that he and his brother both drove to their mother's house, and his brother left there in the pink car.  Petitioner was in the house when the police came and took him into custody.  Ex. E at 99-100.  The green Honda was parked in his mother's driveway at the time, and the police towed it away.  Ex. E at 100.  He said he did not give permission to tow the car, and said he signed the consent to search without knowing what it was.  Ex. E at 101.  He denied telling officers there was a gun in the car and said they searched it before he consented.  Ex. E at 102.

The State presented rebuttal testimony from the officers denying that the search of the vehicle occurred before consent was obtained and refuting the claim that Petitioner was denied access to an attorney.  Ex. E at 118, 124.  The jury returned a verdict finding Petitioner guilty of felon in possession of a firearm, with actual possession of the firearm; not guilty of discharging a firearm; and guilty of possession of less than 20 grams of marijuana.  Ex. E at 162-63.

Petitioner argued in the trial court in the motion for judgment of acquittal, both after the state rested and after trial by written motion, that the evidence was insufficient to prove the elements of the offenses charged, but he did not present the argument as a federal claim.  Ex. E at 83; Ex. A at 88.  He contended in his motion that the evidence was circumstantial and failed to rebut the defendant's reasonable hypothesis of innocence.  Ex. A at 90.

On direct appeal to the state First District Court of Appeal, Petitioner contended that the State failed to prove that Petitioner actually possessed a firearm because the State presented only circumstantial evidence that Petitioner was the shooter, and the jury did not find him guilty of discharging a firearm.  Ex. G.  He contended that the State's evidence raised a reasonable hypothesis of innocence that someone other than

Petitioner was responsible for the shooting.  Ex. G at 21.  Petitioner contended on appeal that the due process clause of the federal Constitution required the State to prove he was the perpetrator beyond a reasonable doubt.  Ex. G at 19.  The State answered and argued that Petitioner "did not advance any federal claim within his motion for JOA." Ex. H at 13.  The appellate court affirmed per curiam without explanation. Ex. J.

Respondent now contends that the federal claim Petitioner makes in his § 2254 petition was not exhausted and, thus, is procedurally defaulted. ECF No. 10 at 5.  As noted earlier, "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  Boerckel, 526 U.S. at 842.  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a similar state-law claim.  *See* Snowden, 135 F.3d at 735.  The petitioner must give the state courts a meaningful opportunity to correct the alleged federal violation, Preston, 785 F.3d at 457; thus, the federal nature of the claim must be fairly presented in each appropriate state court.  *See* Duncan, 513 U.S. at 365; *see also* Picard, 404 U.S. at 275.

Respondent is correct that Petitioner failed to allege the federal nature of his insufficiency claim in each appropriate state court. Moreover, Petitioner's contention in the state courts that the evidence was insufficient because it was circumstantial and failed to rebut defendant's reasonable hypothesis of innocence is a state law claim. Preston, 785 F.3d at 460. Federal law does not distinguish between direct and circumstantial evidence. "Under federal law, the prosecution does not have 'an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt.' " *Id.* (quoting Jackson v. Virginia, 443 U.S. 307, 326 (1979)). "This remains true even when the only evidence relied on is 'circumstantial evidence in the record.' " Preston, 785 F.3d at 461. Thus, Petitioner's contention that his due process rights were violated by evidence that did not rebut his reasonable hypothesis of innocence fails to state a federal claim. Further, that state law claim was rejected by the state courts.

Where, as here, a claim is procedurally defaulted, the Petitioner must show cause for the default and resulting prejudice. Tower, 7 F.3d at 210. Failing that, Petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See*

Schlup, 513 U.S. at 327.  These showing have not been made. Notwithstanding any procedural default, the claim is meritless.

The State presented evidence that Petitioner had an argument with either his girlfriend, or her father, or both at the father's home.  Petitioner is reported to have made statements interpreted to be a threat.  He arrived as a passenger in the green Honda but left in the pink Lincoln.  When the green Honda returned, and shots were fired from the vehicle, Myra Jackson assumed Petitioner's brother was driving the green Honda when she gave her statement to police.  She did not know at the time that Christell Jackson saw the drivers of the green Honda and the pink Lincoln stopped on the side of the road minutes before the shooting, and that the drivers appeared to be switching vehicles.

From this evidence, the jury could make the reasonable inference that Petitioner switched vehicles and was therefore driving the green Honda when shots were fired shortly thereafter.  The witness saw a black gun sticking out of the window and saw no other person in the car.  When the green Honda was later searched with Petitioner's consent, the police found one live round of ammunition and five spent rounds.  The police also found two firearms located in a trunk, which was accessible by an unlatched hatch that opened into the passenger compartment.  Petitioner

told police there was a gun in the car.  Petitioner's brother was last seen running toward the open door of the pink Lincoln.  Taken in a light most favorable to the State, the jury could have concluded that Petitioner drove the car back by the residence and that the contents of the car's trunk was accessible from inside of the car by way of an unlocked hatch that still had the key in it.  Ex. E at 60, 66.[7]  No evidence was presented that Petitioner could not have reached through the hatch from the driver's seat.  Although the jury acquitted him of discharging the firearm in public, the evidence was sufficient for the jury to find that Petitioner had actual possession of the handgun located in the accessible trunk of the vehicle.

Further, acquittal of the charge of discharging a firearm in public does not necessarily negate or conflict with the jury's finding that Petitioner actually possessed a firearm. The jury was instructed that the State must prove not only that Petitioner discharged a firearm, but that he did so on the "right-of-way of a paved road, highway, or street, or that [he] discharged a firearm over the right-of-way of a street."  Ex. E at 131.  "Public place" was defined to the jury as "any place intended or designed to be frequented or

---

[7] The jury was instructed as to actual possession of a firearm as follows: "Actual possession means the object is in the hand of or on the person, or the object is in a container in the hand of or on the person, or the object is so close as to be within ready reach and is under the control of the person."  Ex. E at 130 (emphasis added).  "Ready reach" is not defined in the standard jury instructions.

resorted to by the public." Ex. E at 131. Finding the evidence did not prove the additional elements relating to the public way or place frequented by the public would not necessarily negate a finding that Petitioner actually possessed a firearm.[8]

The Supreme Court in Coleman v. Johnson, 132 S. Ct. 2060 (2012), has made clear that a petitioner faces a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court may do so only if the state court decision was 'objectively unreasonable.' " *Id.* at 2062 (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)). Juries have broad discretion in deciding what inferences to draw from the evidence presented at trial and it is only required that they draw reasonable inferences from basic facts to ultimate facts. Coleman, 132 S. Ct. at 2064. The habeas court must

---

[8] Petitioner's argued at the sentencing hearing that the verdicts were inconsistent and judgment of acquittal for the count of possession of a firearm should be entered. The State countered that it had not actually presented evidence that the roadway from which the shots were fired was a public way or public place; thus the verdicts were not inconsistent. Ex. F at 7. The trial court rejected Petitioner's argument. On direct appeal, Petitioner made one brief argument in his issue on sufficiency of the evidence that the only evidence of actual possession was the count alleging discharge of the weapon in public, for which he was acquitted. Ex. G at 21. The state appellate court affirmed per curiam. Ex. J.

preserve "the factfinder's role as weigher of the evidence."  McDaniel v.

Brown, 558 U.S. 120, 134 (2010) (quoting Jackson, 443 U.S. at 319).

For all the forgoing reasons, habeas relief should be denied.

Petitioner has failed to demonstrate that this Court has jurisdiction to review

his claim under 28 U.S.C. § 2254.  Even if his federal claim had been

properly exhausted, it is without merit.  Accordingly, Petitioner has failed to

demonstrate that the state courts' adjudication of the claim was contrary to,

or involving an unreasonable application of, clearly established federal law

as determined by the Supreme Court, or that it was an unreasonable

determination of the facts in light of the state court record.  Ground 2

should, therefore, be denied.

### Ground 3: Counsel's Failure to Challenge Warrantless Arrest:

Petitioner contends in this ground that his trial counsel rendered

ineffective assistance by failing to challenge Petitioner's warrantless arrest.

He argues that he was seized without an arrest warrant, a search warrant,

or exigent circumstances from within a private residence at the same time

that his vehicle was seized.  ECF No. 1 at 8; ECF No. 3 at 19.  He

contends that evidence he was the person responsible for the shooting

from the vehicle was circumstantial and purely speculative, and that if

counsel had challenged his arrest as illegal, there is a reasonable

probability that his motion to suppress incriminating statements and

evidence arising from his illegal arrest would have been granted.  ECF No.

3 at 20.

In his Rule 3.850 motion, Petitioner contended that trial counsel

rendered ineffective assistance by failing to challenge the warrantless

seizure of his person from a private residence.  Ex. M at 17.  Petitioner

contended that under <u>Payton v. New York</u>, 455 U.S. 573 (1980), the police

may not enter a private dwelling to make an arrest without a warrant.

Petitioner was in his mother's residence at the time he was taken into

custody.  The post-conviction court denied relief, stating in pertinent part:

> First, it does not appear that a <u>Payton</u> violation occurred.
> In <u>Payton</u>, the U.S. Supreme Court held that the Fourth
> Amendment "prohibits the police from making a warrantless
> and nonconsensual entry into a <u>suspect's</u> home in order to
> make a routine felony arrest."  445 U.S. at 576 (emphasis
> added).  The Defendant testified unequivocally at the trial that
> the home in which he was arrested was his mother's residence,
> (trial transcript at p. 99-100), and acknowledges this in the
> instant motion, (motion at 19).  Since the arrest was not at the
> Defendant's home, no <u>Payton</u> violation occurred.  The
> Defendant could not complain about any alleged violation of his
> mother's Fourth Amendment rights, as such rights are personal
> and may not be vicariously asserted.

Ex. N at 225 (some citations omitted).  As a second ground for denial of the

claim, the post-conviction court stated:

> Second, even if a <u>Payton</u> violation did occur, the
> Defendant cannot show prejudice from counsel's failure to

argue that the Defendant's arrest inside his mother's residence was a violation of Payton.  The Defendant argues that he can demonstrate prejudice because had counsel objected, his subsequent statement at the police station that there was a firearm in the vehicle would have been suppressed as fruit of the poisonous tree.  This is incorrect, however.  In New York v. Harris, 495 U.S. 14, 21 (1990), the U.S. Supreme Court held that, where police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the suspect outside of his home, even though the statement is taken after an arrest made in the home in violation of Payton. . . .  In this case, law enforcement clearly had probable cause to arrest the Defendant.  Blountstown police Investigator Timothy Parsons testified at the hearing on the amended motion to suppress that a shooting had occurred in the green Honda Accord and that witnesses who knew the Defendant personally had described the Defendant as being the shooter.  (Transcript of hearing on amended motion to suppress at p. 10, 15-16, 20).  Sergeant Darryl Temple testified at the hearing that a witness who knew the defendant personally stated that she observed the Defendant shooting a gun from inside the green Honda.  (Id. at p. 22-24, 28-30).  Given the witness statements, law enforcement had probable cause to believe that, at a minimum, the Defendant had committed the crime of discharging a firearm in public.  Although the Defendant initially invoked his Miranda rights, he subsequently initiated contact with law enforcement and voluntarily stated that firearms were in the vehicle.[FN3]

> [FN3]This statement was the subject of the initial Motion to Suppress, and the Court twice found the statement was voluntary and did not violate Miranda.  (See attached orders denying motions; transcript of hearing on motion to suppress at p. 22; transcript of hearing on amended motion to suppress at p. 35-37).

Because police had probable cause to arrest the Defendant at the time of the alleged Payton violation, his subsequent statement to police made after Miranda warnings that there were firearms in the vehicle would not have been suppressed.

> Counsel cannot be deemed ineffective for failing to raise a
> meritless argument.  The Defendant has not demonstrated
> prejudice from counsel's failure to make a motion to suppress
> based on an alleged Payton violation.  This Ground is due to be
> denied.

Ex. N at 225-26 (citations omitted).

Petitioner appealed the denial of this claim to the state First District

Court of Appeal, which affirmed per curiam without opinion.  Ex. Q at 32;

Ex. S.  In this Court, Respondent contends that some aspects of

Petitioner's argument here were not exhausted in state court and are

procedurally defaulted.  Respondent cites Petitioner's reliance on Steagald

v. United States, 451 U.S. 204 (1981), for the proposition that the post-

conviction court erred in failing to consider that a condition precedent to a

lawful arrest of a suspect in another person's home is a warrant based on

probable cause that the suspect will be in that home.  ECF No. 10 at 10.

Respondent also contends that Petitioner's argument concerning

insufficient evidence of intervening events and his argument on standing,

which were raised in this Court, are also unexhausted.  ECF No. 10 at 11.

Regardless of any procedural default, the claim should be denied on

the merits.  Even if the warrantless arrest was improper under Payton or

Steagald, the post-conviction court was correct in concluding that because

police had probable cause to arrest Petitioner, and because he made the

incriminating statements outside of the residence voluntarily after waiving

his <u>Miranda</u> rights, there is no reasonable probability that his subsequent

statement to police that there was a gun in the car would have been

suppressed.

Under the principles set forth in <u>New York v. Harris</u>, 495 U.S. 14

(1990), the post-conviction court's adjudication of this claim was proper.  In

<u>New York v. Harris</u>, the Supreme Court held that where police have

probable cause to arrest a suspect, the exclusionary rule does not require

suppression of a statement made by the defendant outside the home, even

though the statement was taken after a warrantless arrest effected in the

home.  *Id.* at 21.  <u>Harris</u> involved the admissibility of a custodial statement

taken in circumstances similar to those in this case.  The police arrested

Harris in his home without a warrant, but based on probable cause.  The

Supreme Court found the admission into evidence of his subsequent

custodial statements proper, holding that "where the police have probable

cause to arrest a suspect, the exclusionary rule does not bar the State's

use of a statement made by the defendant outside his home, even though

the statement is taken after an arrest made in the home in violation of [the

Fourth Amendment]."  *Id.  See also* <u>United States v. Slaughter</u>, 708 F.3d

1208, 1212-13 (11th Cir. 2013) (" '[W]here the police have probable cause

to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of [the Fourth Amendment].' ") (quoting <u>Harris</u>, 495 U.S. at 21)); *See also* <u>Parker v. Allen</u>, 565 F.3d 1258, 1290 (11th Cir. 2009) (same); <u>Krawczuk v. State</u>, 634 So. 2d 1070, 1072 (Fla. 1994) (same).

The Supreme Court in <u>Harris</u> explained that the statement was admissible because it was "not the fruit of the fact that the arrest was made in the house rather than somewhere else." 495 U.S. at 20.  The Court further explained:

> To put the matter another way, <u>suppressing the statement taken outside the house would not serve the purpose of the rule that made Harris' in-house arrest illegal.  The warrant requirement for an arrest in the home is imposed to protect the home</u>, and anything incriminating the police gathered from arresting Harris in his home, rather than elsewhere, has been excluded, as it should have been; the purpose of the rule has thereby been vindicated.  <u>We are not required by the Constitution to go further and suppress statements later made by Harris in order to deter police from violating Payton</u>. . . . Even though we decline to suppress statements made outside the home following a <u>Payton</u> violation, the principal incentive to obey <u>Payton</u> still obtains: the police know that a warrantless entry will lead to the suppression of any evidence found, or statements taken, inside the home.  If we did suppress statements like Harris', moreover, the incremental deterrent value would be minimal.

*Id.* (emphasis added).  These justifications for admission of evidence in spite of a violation were also explained in <u>Hudson v. Michigan</u>, 547 U.S. 586 (2006).[9]  There, the Court held that the exclusionary ruled did not require suppression of the evidence when the interests to be protected, and which were violated, had nothing to do with the seizure of the evidence.  *Id.* at 594.  The Court also stated, "Attenuation also occurs when, even given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained."  *Id.* at 593.

Similar to the facts in <u>Harris</u>, the evidence Petitioner contends would have been suppressed if his counsel had challenged the warrantless arrest was not the result of his arrest in the home, but resulted from his statement made and consent given outside the home.  Thus, suppression of the statements and evidence would not serve the interest intended to be protected by the requirement of a warrant for arrest in the home.  In light of the holding in <u>Harris</u>, there is no reasonable probability that, but for counsel's alleged error in failing to challenge the arrest, the statement and evidence would have been suppressed.

---

[9] <u>Hudson</u> involved a claim of illegal arrest based on violation of the "knock and announce" rule.  547 U.S. at 588.

Even without application of the principle set forth in <u>Harris</u>, Petitioner would still be required to demonstrate not only that his initial arrest was illegal but also that the connection between the initial police illegality and the incriminating evidence was not " 'so attenuated as to dissipate the taint' " of the arrest.  <u>Agee v. White</u>, 809 F.2d 1487, 1490 (11th Cir. 1987) (quoting <u>Wong Sun v. United States</u>, 371 U.S. 471, 491 (1963)).  The evidence will not be excluded if "intervening events break the causal connection between the illegal arrest and the confession so that the confession is 'sufficiently an act of free will to purge the primary taint.' " <u>Taylor v. Alabama</u>, 457 U.S. 687, 690 (1982) (quoting <u>Brown v. Illinois</u>, 422 U.S. 590, 602 (1975)).  The admissibility depends on whether the statement was acquired "by the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  <u>Wong Sun</u>, 371 U.S. at 487-88.  Several factors are relevant in making this determination, including "[t]he temporal proximity of the arrest and confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct."  <u>Brown</u>, 422 U.S. at 603-04 (footnotes and citations omitted).  Also relevant is whether <u>Miranda</u> warnings were given.  *Id.;* <u>Taylor</u>, 457 U.S. at 690; <u>United States v. Edmondson</u>, 791 F.2d 1512, 1515 (11th Cir.1986).

The police had probable cause to arrest Petitioner because, shortly before the arrest, witnesses indicated that shots were fired from the driver's side of the green Honda he was identified as driving.  The green Honda was found at his mother's residence where he was also located.  Thus, no purposeful flagrancy in the alleged official misconduct was shown.  *Cf.* Brown, 422 U.S. at 604 (finding the impropriety of the arrest purposeful because officers did not have probable cause and arrested the defendant "in hopes that something might turn up" and intended to cause surprise, fright, and confusion).

"No single fact is dispositive."  Brown, 422 U.S. at 603.  Pertinent to this inquiry is the fact that the statement Petitioner made concerning a gun in the vehicle and his consent to search occurred after he was advised of his rights and waived them.  Also pertinent are the temporal proximity of the arrest to the inculpatory statements, any intervening circumstances, but "the voluntariness of the statement is the threshold requirement."  *Id.* at 603-04.  The statements and consent to search by Petitioner were found by the trial court and the post-conviction court to have been voluntary.  The state appellate court affirmed.

The record is devoid of any evidence showing the officers' conduct during the arrest or the interview interfered with Petitioner making a

voluntary waiver of his rights, a voluntary statement, and voluntary consent to search the car.  *See* United States v. Smith, 688 F.3d 730, 741 (11th Cir. 2012) (finding absence of such evidence militates in favor of concluding the causal connection between the illegal conduct and the defendant's consent had become "so attenuated as to dissipate the taint").

At the first motion to suppress hearing, Officer Temple testified that after Petitioner was taken into custody and read his Miranda rights, he stated that he did not want to talk to any officers.  Temple said he honored that and did not question Petitioner but was in the booking room with him doing paperwork.  Temple testified, "While sitting there, he asked to speak with Major Smith, at that time."  Ex. B at 5.  He explained that Petitioner actually said "Rodney," who was Chief Rodney Smith, then a major. Temple said when Petitioner asked to speak to "Rodney," he was not being questioned.  Ex. B at 6.  A conversation ensued between Rodney Smith and Petitioner in which Temple heard Smith tell Petitioner that he did not have to make any statements.  Ex. B at 7.  Petitioner and Smith then went into Smith's office.  Blountstown police Investigator Timothy Partridge also testified:

> A (Partridge).  Mr. Smith said that he [Petitioner] did not have to speak with him.  I would say at least four of five times that he, you know, that he did not have to speak with him.  And then I heard Kerr state that there was a gun in the car.

Q. And was, did you hear anybody - - did you hear any questions being asked of him, where is the gun?

A. No.

Ex. B at 11.

Chief Smith testified at the suppression hearing that after Petitioner requested to speak with him, Smith told Petitioner numerous times that he did not have to speak with officers and that he could call a lawyer.  Smith testified, "And then he said, well, just said there's a gun in the car."  Ex. B at 17.  Petitioner also told him it was not his gun.  At that point, officers asked for consent to search the car, which was given in writing on a consent to search waiver form.  Ex. B at 18.  The car being searched was impounded at the time.

The Supreme Court has rejected a "but for" test for determining whether evidence is a fruit of unlawful police activity.  Wong Sun, 371 U.S. at 487-88.  The "more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "  Id. at 488 (internal quotation omitted).  The testimony at the suppression hearing established that Petitioner spontaneously asked to speak to Smith and spontaneously offered that there was a gun in the car.

When he made the statement, he was not being interrogated.  These facts and circumstances militate in favor of concluding that the causal connection between any illegal arrest and the defendant's statement and consent to search was sufficiently attenuated so as to dissipate any taint.

As an additional ground why suppression would not have been the probable result of a challenge to Petitioner's warrantless arrest, the guns found in the green Honda would have been discovered regardless of the arrest.  "[E]vidence may be admissible if the government inevitably would have discovered it without the aid of the unlawful police conduct, pursuant to [this circuit's] limited version of the 'inevitable discovery' rule."  United States v. Timmann, 741 F.3d 1170, 1183 (11th Cir. 2013) (footnote omitted) (quoting United States v. Bailey, 691 F.2d 1009, 1013 (citing United States v. Brookins, 614 F.2d 1037, 1042 n.2, 1044-49 (5th Cir. 1980); United States v. Wilson, 671 F.2d 1291, 1294 (11th Cir. 1982))).  At the second evidentiary hearing, Officer Partridge testified that when Petitioner was at the police station, he was given a copy of the notice of forfeiture of the vehicle filed by the police.  Ex. C at 11-12.  Therefore, even without Petitioner's warrantless arrest and subsequent statements and consent to search, the evidence of the guns would have been discovered in an inventory search of the vehicle to be forfeited.

For all these reasons, Petitioner cannot demonstrate a reasonable probability that, but for counsel's failure to challenge the warrantless arrest, the evidence of his statement and search of the car would have been suppressed and that the result of the proceeding would have been different.  Thus, Petitioner has not demonstrated prejudice under the second prong of the test set forth in Strickland.[10]  As discussed earlier, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Mirzayance, 556 U.S. at 123 (quoting Schriro, 550 U.S. at 473).  "It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  Mirzayance, 556 U.S. at 123. Based on the authorities cited above and the facts of this case, the post-conviction court's adjudication of the claim was not unreasonable.

Accordingly, Petitioner has failed to demonstrate that the state courts' adjudication of this claim is contrary to, or involving an unreasonable application of, clearly established federal law, as determined by the

---

[10] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697.

Supreme Court, or is an unreasonable determination of the facts in light of the state court record.  Thus, Ground 3 should be denied.

## Conclusion

Based on the foregoing, Petitioner Nicholas Norris Kerr, is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether

a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on February 28, 2017.


**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed.**

**R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the
electronic docket is for the Court's internal use only and does not
control</u>.  If a party fails to object to the magistrate judge's findings or
recommendations as to any particular claim or issue contained in a
Report and Recommendation, that party waives the right to challenge
on appeal the district court's order based on the unobjected-to factual
and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**